IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EDWARD BURGESS,

                Plaintiff,

  v.

GARY BOUGHTON, MARK KARTMAN,
PHILLIP FREDRICK, JOHN DOE,
OFFICER MCCULLEN,
REBECCA FELDMAN-TRACY, STACY HOEM,
RUBIN SCOTT, SGT. M. LARSON, MINK,
CAPTAIN ESSER, LT. SCULLION,
SGT. MCCLAIMANS, MARY LEE,
T-KROENING-SKIME, LT. ATWOOD,
CAPTAIN HANFELD, SGT. GILMAN, and
WILLIAM BROWN,

                Defendants.

OPINION & ORDER

18-cv-527-jdp

---

Pro se plaintiff Edward Burgess, an inmate incarcerated at the Wisconsin Secure Program Facility (WSPF), brings this civil complaint under 42 U.S.C. § 1983 alleging that various prison officials discriminated against him because of his interracial marriage and violated several of his other constitutional rights, too. Burgess has paid the initial partial filing fee for this action as ordered by the court.

The next step is for me to screen the complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915A. In screening any pro se litigant's complaint, the court must read the allegations of the complaint generously. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).

After reviewing Burgess's complaint with these principles in mind, I conclude that the complaint violates Rule 20 of the Federal Rules of Civil Procedure by joining several claims together that do not belong in the same lawsuit. Accordingly, I will give Burgess the opportunity to choose which claims he wishes to pursue under this case number, and to decide whether he wishes to bring his other claims in a second lawsuit.

ALLEGATIONS OF FACT

I draw the following facts from Burgess's complaint, Dkt. 1, and I accept them as true at the screening stage.

Plaintiff Edward Burgess is an inmate at WSPF. He has a history of physical and mental health issues, including a degenerative knee condition that makes it difficult for him to walk and a history of suicide attempts.

On December 2, 2017, Burgess's wife, Amber Burgess, visited him at WSPF. The next day, Burgess learned that after the visit, Amber was searched for drugs because the two of them were suspected of sneaking drugs into the institution. Burgess felt that he and his wife were being harassed and discriminated against because of their interracial marriage. (Burgess is black; his wife is white.)

The next day, December 4, Burgess felt depressed and decided to commit suicide. He asked defendant Sergeant McClaimans to alert the Psychological Services Unit (PSU). He specifically requested defendant Dr. Mink. McClaimans called Mink, but Mink refused to see Burgess, explaining that she had already seen him that day. (Burgess believes that Mink refused to see him because he had threatened to sue her for not taking his mental health condition seriously.)

2

The same day, defendant Captain Esser directed defendant Lieutenant Scullion to place Burgess in temporary lock up. (It's not clear why.) When Scullion came to Burgess's cell, Burgess complained to him about the harassment and racial discrimination that he perceived. Burgess also told Scullion that he wanted to be placed in observation status and threatened to refrain from eating or speaking until he was transferred out of WSPF. Then, Burgess grabbed 50 to 60 pills of Tylenol and showed them to Scullion. Another correctional officer tried to use an incapacitating agent to stop Burgess from taking the pills, but was unable to open the trap door on Burgess's cell door before Burgess swallowed the pills. Scullion summoned other correctional officers, who placed Burgess in a wheelchair and restrained him, hurting Burgess's arm in the process. They then escorted Burgess to the health services unit, where a nurse assessed him and sent him to the emergency room. Burgess recovered and was placed in observation upon his return to WSPF.

On December 5, Burgess again asked McClaimans to contact PSU because he was feeling suicidal and depressed. Once again, Mink refused to see Burgess. Burgess climbed onto the sink in his cell and jumped, hitting his head on the wall and floor. Health services staff responded and transported Burgess to the emergency room. Burgess was treated and returned to WSPF. He was released from observation status on December 7.

On December 8, Burgess was allowed a no-contact visit with his wife. Defendants Officer McCullen and John Doe escorted Burgess to the visitation room in a wheelchair. After the visit, defendant William Brown, the unit manager, asked Burgess if he enjoyed the visit. Burgess said, "Of course." *Id.* ¶ 108. Brown then said, "You should have, because it may be your last, for a very long time, with your wife, anyway." *Id.* Burgess asked Brown what he meant. Brown responded, "You'll see soon enough. But right now, you're going to have to do

without your wheelchair—sue over that!" *Id.* ¶ 109. Burgess explained to Brown that he was allowed a wheelchair because of his degenerative knee condition, which is so painful that he cannot place any weight on one knee. Brown responded, "Look at it as part of your prison punishment, I am sure your victim and family also had to endure pain." *Id.* ¶ 115. Then Brown walked away, saying, "You'll be returned to your cell now." *Id.* ¶ 119. McCullen and John Doe then escorted Burgess back to his cell without a wheelchair, causing Burgess extreme pain. Burgess explained about his medical condition again, but McCullen said "there was nothing he could do" because Brown "had ordered them to escort him to his cell without the use of a wheelchair." *Id.* ¶ 124.

At some point, Mink "reclassified" Burgess by removing his diagnosis of "adjustment disorder with depressed mood" because he had "not reported an identifiable stressor" or "reported symptoms of depression since February." *Id.* ¶ 63. Defendant Stacy Hoem, another PSU staff member, agreed with Mink's decision.

Over the next few weeks, Burgess sent several notes to Mink, complaining about her inaction on December 4 and 5. Mink responded that she considered it best not to "immediately respond to an overtly instrumental behavior now clearly identified as constituting inappropriate secondary gain." *Id.* ¶ 67. Burgess also sent several notes to Hoem, accusing her of unprofessional behavior. Hoem responded, explaining that Burgess was "rude and disrespectful" in their interactions and that Burgess could meet with a PSU staff member by requesting an appointment. Burgess then sent requests to PSU asking to be transferred from WSPF to the Wisconsin Resource Center and complaining that he had only been seen by PSU staff during clinical rounds at his cell, whereas he would prefer to be seen in a "private, confidential setting." *Id.* ¶ 92.

4

On January 8, 2018, Burgess asked defendant Phillip Fredrick, the WSPF property manager, for a certain legal book from his property that he needed for litigation. Fredrick said, "I'll send it, just send me an inmate request to remind me." *Id.* ¶ 130. Then he asked, "Who are you suing?" *Id.* ¶ 131. Burgess asked Fredrick if it mattered, and Fredrick replied, "Maybe." *Id.* Burgess then explained that he was suing the warden "and a few others." *Id.* ¶ 132. Fredrick laughed and said, "See if you get it!" *Id.*

Later that day, Burgess sent an inmate request about the legal book to Fredrick, as Fredrick had instructed him to do. He explained that he had a "court ordered deadline on some issues that are due on January 23, 2018." *Id.* ¶ 133. He received a response from Fredrick the next day, which stated, "Book exchanges are the first of the month, write back when it gets close to that time. Thanks!" *Id.* ¶ 141. Burgess explains that because he did not have this book, he "failed to answer defendants' proposed findings of fact and summary judgment" in two of his lawsuits in the Eastern District of Wisconsin, and as a result, those cases were dismissed. *Id.* ¶ 137.

On February 25, Burgess placed in the mail a "sealed envelope addressed to an attorney." *Id.* ¶ 145. The mailroom sergeant notified Burgess that the envelope was not delivered.

ANALYSIS

I take Burgess to claim that defendants failed to provide him with adequate medical treatment in violation of his Eighth Amendment rights, discriminated against him because of his race in violation of his Fourteenth Amendment rights, retaliated against him in violation of his First Amendment rights, and barred his access to the courts in violation of his First

5

Amendment rights. But he cannot proceed on all of his claims in this lawsuit because they are not sufficiently related to each other. Federal Rule of Civil Procedure 20 prohibits a plaintiff from asserting unrelated claims against different defendants in the same lawsuit. Defendant may be joined in one lawsuit only if the claims against them arise out of the same transactions or occurrences and present questions of law or fact that are common to them all. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Burgess appears to assert one claim against all defendants. He contends that all of the actions described in his complaint are the result of racial discrimination—he believes that defendants "continue to subject him to racial harassment and discrimination based off his marriage to a Caucasian female." Dkt. 1, ¶ 151. To state a claim under the Fourteenth Amendment's Equal Protection Clause, a plaintiff must establish that the defendant has treated him differently than people of a different race and did so purposefully. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). If all of the actions described in Burgess's complaint were actually part of a concerted effort to discriminate against Burgess because of his race (and his wife's race), his claims would be related and he could proceed on them in a single suit. But Burgess has not alleged any facts from which I could infer that (1) WSPF inmates who are not married to people of another race are treated differently, (2) defendants acted in concert with the purpose of discriminating against Burgess because of his and his wife's races. And it appears that many of the defendants would have no reason to know of Burgess's wife's race, and all of the defendants' actions were taken for reasons unrelated to Burgess's race (even if the reasons were not always legitimate). So I will not allow Burgess to proceed on equal protection claims.

As a result, Burgess's claims against the various defendants are not related, and he must choose which ones he wishes to proceed on in this suit. Without taking any position on the

6

relative merit of the options, Burgess must choose to pursue one of the following possible separate lawsuits:

> Lawsuit 1: Eighth Amendment deliberate indifference claims and First Amendment retaliation claims against defendants McClaimans, Esser, Scullion, Mink, and Hoem concerning their responses to Burgess's threats to commit suicide and the subsequent reclassification of Burgess's mental health diagnosis;
>
> Lawsuit 2: Deliberate indifference claims against defendant McCullen, John Doe, and Brown concerning the refusal to allow Burgess a wheelchair upon his return from visitation on December 8; or
>
> Lawsuit 3: Access-to-the-court and retaliation claims against defendant Fredrick concerning Fredrick's refusal to provide Burgess with his legal book.

So I will dismiss the complaint, at least as it is presently structured. At this point, Burgess need not submit a new amended complaint, but he will have to choose which set of claims he would like to pursue in this case. After Burgess has informed the court of his choice, I will treat the portion of his complaint pertaining to those claims as the operative pleading, and I will screen the claims he has chosen. If Burgess also wishes to proceed on the other sets of claims in separate lawsuits, he should inform the court of that fact, but he will then owe the court separate filing fees for each additional lawsuit he picks.

ORDER

IT IS ORDERED that:

1. Plaintiff Edward Burgess's complaint, Dkt. 1, is DISMISSED under Federal Rule of Civil Procedure 20.

2. Plaintiff may have until September 5, 2018, to identify for the court which claims he wishes to pursue under this case number, and whether he wishes to pursue his other sets of claims in new lawsuits.

Entered August 15, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge