IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EDWARD B. BURGESS,

                Plaintiff,

  v.                                                    OPINION and ORDER

STACY HOEM, RUBIN SCOTT,                          18-cv-527-jdp
DR. MINK, LT. SCULLION,

                Defendants.

---

Plaintiff Edward Burgess, appearing pro se, is incarcerated at Wisconsin Secure Program Facility (WSPF). I granted him leave to proceed on Eighth Amendment claims based on his allegation that WSPF officials failed to respond adequately to his mental health needs and retaliated against him when he complained about their failure to take his mental health needs seriously. Burgess has filed three motions: (1) a motion to reconsider my prior screening order, which I construe as a motion to amend the complaint, Dkt. 22; (2) a motion for assistance in recruiting counsel, Dkt. 11; and (3) two letters to Magistrate Judge Crocker, which I construe as a motion for preliminary injunctive relief, Dkt. 27 and Dkt. 29.

For the reasons explained below, I will grant Burgess's motion to amend the complaint in part and deny it in part: I will grant Burgess leave to proceed on Eighth Amendment claims against Captain Esser, Jolinda Waterman, and Rebecca Tracy-Feldman, but I will once again deny him leave to proceed as to Sergeant McClaimans.

I will deny without prejudice Burgess's motion for assistance in recruiting counsel and his motion for preliminary injunctive relief.

**A. Motion to amend**

I previously dismissed Burgess's Eighth Amendment claims against Esser, McClaimans, Waterman, and Tracy-Feldman because I determined that the allegations Burgess made about them in his amended complaint, Dkt. 9, were too vague to meet the requirements of Federal Rule of Civil Procedure 8. *See* Dkt. 10, at 7. In his motion to amend, Burgess provides some additional detail about how these defendants are involved in the events underlying his claims.

These new allegations are sufficient to state a claim against Esser. Burgess alleges that, on December 4, 2017, Esser came to Burgess's cell to tell him that he was being placed in temporary lockup for making threats against a non-defendant WSPF correctional officer. Burgess told Esser that he felt like harming himself, and Esser responded by telling Burgess that "he did not care, go ahead and do it." Dkt. 22, at 3. Esser left Burgess's cell and went to instruct defendant Scullion to place Burgess in temporary lockup. Burgess says that Esser "deliberately failed to inform Lt. Scullion [that] Burgess stated with concise words he was going to self-harm." *Id.* This is sufficient to state an Eighth Amendment claim against Esser, because Burgess alleges that Esser (1) knew that Burgess was at risk for self-harm; and (2) failed to take reasonable measures to help him. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (discussing elements of a deliberate indifference claim).

Burgess's new allegations are also sufficient to state Eighth Amendment claims against Jolinda Waterman and Rebecca Tracy-Feldman.[1] Burgess alleges that after being treated at the hospital for his December 4, 2017 Tylenol overdose, hospital staff advised WSPF staff that

---

[1] Burgess's original and amended complaint referred to a "Rebecca Feldman-Tracy," but his latest motion and attached exhibits refer to "Rebecca Tracy-Feldman." I will refer to her as "Tracy-Feldman" going forward.

Burgess should be allowed to return to the hospital for follow-up care if necessary. Burgess says that, once back at WSPF, he told Waterman and Tracy-Feldman, two members of the health service unit staff, that his condition had worsened and that he felt he needed to go back to the hospital, either to have his stomach pumped or to receive an additional dose of charcoal solution. He says that he told Waterman and Tracy-Feldman that his stomach was burning and hurting, that he was regurgitating blood, felt dizzy, had a hot sensation in both ears, and couldn't stop sweating, shaking, or blinking. Despite these reported symptoms, Waterman and Tracy-Feldman refused to allow Burgess return to the hospital or to provide him with follow-up care.

I infer from these allegations that Waterman and Tracy-Feldman knew about Burgess's serious medical need and disregarded it, which is enough to state an Eighth Amendment claim. These claims are slightly different than the ones Burgess asserts against the other defendants in this case. Whereas Burgess's current claims concern whether WSPF staff violated Burgess's Eighth Amendment rights by failing to take sufficient measures to prevent him from engaging in self-harm, these claims concern an alleged failure to provide Burgess with necessary medical treatment for his painful physical symptoms. Nonetheless, the incident with Waterman and Tracy-Feldman immediately followed one of the two suicide attempts at issue here and implicate the same deliberate indifference legal theory, so I am satisfied that these claims can proceed together in this lawsuit without violating Federal Rule of Civil Procedure 20(a)(1).

So I will allow Burgess to proceed on these claims against Waterman and Tracy-Feldman in this lawsuit, with one important clarification. Burgess makes several statements about Waterman and Tracy-Feldman's alleged motives for denying him care that do not state claims under the Eighth Amendment and cannot proceed as part of this suit. Burgess says that

3

Waterman and Tracy-Feldman ignored his pleas for medical attention because "they had been briefed by security in a conspired action to find an [il]licit drug in Burgess['s] blood, by performing a[] blood test that had no medical connection for a medical remedy for Burgess['s] medical complaints." Dkt. 22, at 5. Burgess says that this was part of a larger conspiracy by security staff to frame him for illicit drug use and cancel his visitation with his wife. *Id.* at 6. None of Burgess's allegations plausibly suggest that Waterman and Tracy-Feldman's actions on December 4 were in any way connected to a conspiracy to frame Burgess for drug use or cancel his visitation with his wife. Mere speculation, unsupported by plausible factual allegations, is not sufficient to state a claim, under the Eighth Amendment or otherwise. So although I am allowing Burgess to proceed on Eighth Amendment claims against Waterman and Tracy-Feldman based on their failure to address his medical needs following his December 4, 2017 suicide attempt, I am not granting Burgess leave to proceed on claims related to this alleged conspiracy.

Finally, Burgess asks me to allow him to pursue his claim against McClaimans. I originally dismissed McClaimans as a defendant because Burgess's complaint provided no basis from which to infer that McClaimans acted with deliberate indifference. *See* Dkt. 10, at 7. In his motion to amend, Burgess again provides no details or information about McClaimans's involvement in the underlying events that would permit me to infer that McClaimans somehow violated Burgess's Eighth Amendment rights. So I will not allow Burgess to proceed on a claim against McClaimans.

**B. Motion for assistance in recruiting counsel**

As for Burgess's motion for assistance in recruiting counsel, I will deny it without prejudice. There is no right to counsel in civil cases, *Olson v. Morgan*, 750 F.3d 708, 711 (7th

4

Cir. 2014), so a party who wants assistance from the court in recruiting counsel must meet certain requirements. *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010). Burgess has already met two of the requirements because he has shown that he is unable to afford counsel and that he has made reasonable efforts on his own to find a lawyer. *See* Dkt. 6; Dkt. 14-1.

But Burgess must also show that his is one of the relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds the litigant's demonstrated ability to prosecute it. *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc). "The question is not whether a lawyer would present the case more effectively than the pro se plaintiff" but instead whether the pro se litigant can "coherently present [his case] to the judge or jury himself." *Id.* at 655. Almost all of this court's pro se litigants would benefit from the assistance of counsel, but there are not enough lawyers willing to take these types of cases to give each plaintiff one. I must decide for each case "whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others, should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests." *McCaa v. Hamilton*, 893 F.3d 1027, 1036 (7th Cir. 2018) (Hamilton, J., concurring).

Burgess says that this case is too complex for him to handle without the assistance of counsel because he suffers from severe mental health problems. But mental health challenges are unfortunately common among prisoners who litigate in this court. And just because Burgess struggles with mental health issues does not mean that the legal and factual difficulty of the case will exceed his ability to prosecute it.

Burgess also says that he needs counsel because the case involves complex legal issues, will require discovery, and may boil down to a credibility contest. But it is far too early to tell whether the case will involve complex issues that exceed Burgess's capacity. The case has not

5

yet passed the relatively early step in the litigation in which defendants file a motion for summary judgment based on exhaustion of administrative remedies, which sometimes results in the dismissal of cases like this one before they advance deep into the discovery stage of the litigation. Although complexities may come into focus as the case moves forward, it is still too soon to tell whether assistance of counsel will be necessary.

So I will deny Burgess's motion for now. If Burgess continues to believe that he is unable to litigate the lawsuit himself as the case progresses, he is free to renew his motion. But he will have to explain what specific litigation tasks he cannot perform. If Burgess finds it difficult to meet a specific court deadline, then he should write the court about that and seek an extension of that deadline.

## C. Motion for preliminary injunctive relief

Burgess has filed two letters to Magistrate Judge Crocker asking for assistance dealing with recent events he has experienced at WSPF. Dkt. 27 and Dkt. 29. In his first letter, he says that on February 7, 2019, he overdosed on Tylenol again and was sent to the hospital for treatment. When he got back to WSPF, he was placed in observation and then in temporary lockup pending the issuance of a conduct report. He says he is being punished for attempting suicide, that WSPF has placed him in a segregation cell that is not handicap equipped and has no emergency call button, and that psychological service unit staff still refuses to help him. Burgess's second letter contains many of the same allegations, along with attachments that he says provide evidence of recent incidents of harassment, retaliation, and deliberate indifference to his mental health needs. He also provides a declaration from the occupant of the cell next to Burgess's, who says that Burgess is in significant distress. Dkt. 30.

Burgess clearly desires some sort of immediate intervention from the court, so I construed the letters as a motion for preliminary injunctive relief. But the allegations he makes in his letters concern events that postdate the claims at issue in this case. Burgess is free to file a new lawsuit based on these events, but I cannot award Burgess injunctive relief based on acts unrelated to Burgess's prosecution of the claims in this lawsuit.

That said, I have an independent obligation to ensure that Burgess is safe, regardless of whether he has fulfilled the procedural requirements for seeking injunctive relief. Burgess's allegations raised concerns that he would make further attempts to engage in self-harm, so Magistrate Judge Crocker asked the Attorney General's Office to explain what measures WSPF is taking to ensure Burgess's safety. Dkt. 28. The Attorney General's response indicated that WSPF psychological services clinicians are aware of Burgess's recent statements regarding self-harm, and that he was seen for evaluation and monitoring on February 18, 21, and 22. Dkt. 31. It was reported that at Burgess's last evaluation, Burgess denied thoughts of suicide or self-harm and was determined not to present a current risk. He has been instructed to contact health services if suicidal thoughts persist.

I am satisfied that Burgess is not in imminent danger, so I will deny Burgess's motion for preliminary injunctive relief and will not order defendants to take further action. If Burgess wishes to pursue claims related to the events of February 7, 2019, he should raise them in a separate lawsuit.

ORDER

IT IS ORDERED that:

1. Plaintiff Edward Burgess's motion to amend the complaint, Dkt. 22, is GRANTED in part and DENIED in part. Burgess is now granted leave to proceed on the following claims:

    a. Eighth Amendment deliberate indifference claims against defendants Mink, Stacy Hoem, Rubin Scott, Lieutenant Scullion, Captain Esser, Jolinda Waterman, and Rebecca Tracy-Feldman.

    b. First Amendment retaliation claims against defendants Mink and Hoem.

2. Burgess's motion for assistance in recruiting counsel, Dkt. 11, is DENIED.

3. Burgess's motion for preliminary injunctive relief, Dkt. 27 and Dkt. 29, is DENIED.

Entered March 5, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge