IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EDWARD B. BURGESS,

                Plaintiff,

v.                                               OPINION and ORDER

ANGELA MINK,                                    18-cv-527-jdp

                Defendant.

---

Pro se plaintiff Edward Burgess alleges that defendant Angela Mink, a psychological associate at Wisconsin Secure Program Facility (WSPF), violated his Eighth Amendment rights by failing to respond to Burgess's threats of self harm on December 5, 2017. At the time, Burgess was in close observation status after an earlier self-harm attempt. He threatened to harm himself yet again and demanded that someone from the psychological staff come to his cell. Burgess climbed onto the sink, dropped to the floor, and sustained minor injuries. Both sides have moved for summary judgment. Dkt. 92 and Dkt. 96.

Burgess says that the Eighth Amendment imposes on Mink a "mandatory duty to protect Burgess from all harms." Dkt. 93, at 1. The Eighth Amendment imposes no such strict obligation. Rather, it prohibits a prison employee from consciously disregarding a known risk to an inmate's health or safety. There is no dispute that when Mink declined to respond to Burgess's demand, Burgess was in close observation status and he was communicating with prison security staff. No one, including Mink, was consciously disregarding Burgess's potential for self-harm. I will deny Burgess's motion, grant Mink's motion, and dismiss the case.

PRELIMINARY MATTERS

I begin with several motions filed since the close of summary judgment briefing.

First, Burgess asks for leave to file a three-page surreply in response to Mink's response brief. Dkt. 144. He does not attach the proposed surreply, nor does he explain why he believes a surreply is necessary. Mink's reply brief didn't raise any new issues that Burgess hasn't had an opportunity to respond to, so that motion is denied.

Second, Burgess asks me to "appoint counsel in a limited capacity" to assist Burgess "in understanding jury trial procedures and to file a surreply" to Mink's reply brief. Dkt. 145, at 1. He reiterates many of the arguments he made in his prior motions for assistance in recruiting counsel, *see* Dkt. 11; Dkt. 40; Dkt. 77; Dkt. 90; Dkt. 111, namely that he has limited legal knowledge and reading comprehension, he has relied heavily on the assistance of a jailhouse lawyer, and he is mentally ill. I've addressed those concerns in a previous order, Dkt. 131, and Burgess was able to present his side of the facts pertinent to the motions for summary judgment. The current motion is denied because I've determined that Burgess is not entitled to a surreply and he will not need assistance in preparing for trial because there will be no trial.

Third, Burgess askes the court to accept a late-filed supplemental brief in support of his motion for summary judgment. Dkt. 152. He attaches the proposed brief and supporting materials. *See* Dkt. 153–57. Under the consolidated briefing schedule, Dkt. 105, Burgess was permitted to file only his moving brief, Dkt. 93, and his combined opposition and reply brief, Dkt. 135. Nonetheless, Magistrate Judge Crocker granted Burgess permission to file an additional brief. Dkt. 150. He gave Burgess a deadline of January 17, 2020, and he said that Burgess "should not expect any further extensions of this deadline." *Id.* Burgess filed the materials late—on February 10, 2020—and Mink asks me to reject them as untimely. But

Burgess provided an explanation for the delay: he was moved to a new institution while he was supposed to be preparing his brief and he did not have access to his legal materials. So I'll accept the late filing. But Burgess's supplemental materials add nothing that is material to my summary judgment analysis.

Fourth, Mink has moved to stay the pretrial deadlines pending resolution of the summary judgment motions. Dkt. 159. I'll deny that motion as moot because there will be no need to file pretrial materials.

UNDISPUTED FACTS

The following facts are undisputed except where noted.

Burgess is now incarcerated at Prairie du Chien Correctional Institution, but the incidents at issue occurred while he was at WSPF. Defendant Angela Mink was employed as a psychological associate in WSPF's psychological services unit (PSU).

On December 4, 2017, Burgess attempted to overdose on Tylenol and was taken to the hospital for emergency care. When he was returned to WSPF he was placed in close observation status, also known as suicide watch. Placement on close observation status meant that Burgess was confined to a cell with minimal property, where he was checked by security staff at least every 15 minutes.

The next day, December 5, at about 10:26 a.m., Mink went to Burgess's cell to evaluate Burgess's risk of self-harm, but Burgess did not respond to her inquiries. (The reason for Burgess's refusal to speak is disputed, although Burgess does not cite evidence to raise a genuine dispute that Burgess was speaking appropriately with staff at 10:20 a.m. Dkt. 102-1, at 7.)

3

Mink ordered Burgess's continued placement in close observation "so that unit staff could more closely monitor his behavior and reduce the risk of self-harm." Dkt. 102-1, at 2.

Later that day, at about 3:35 p.m., Burgess demanded that someone from PSU come to speak with him. A cell video recorded the incident. He stands up from sitting on his bed. He steps up onto the bed while speaking to someone outside the cell. From the bed he climbs onto the toilet, and then starts to step up onto the sink with his left foot. As soon as he lifts his right foot from the toilet, he falls to the floor. The time elapsed from Burgess standing up from the bed to falling to the floor is 22 seconds.

Sergeant McClaimans, the officer on Burgess's unit at the time, informed Mink that Burgess was standing on his sink and demanding to speak with someone from PSU. Mink did not return to Burgess's cell.

Burgess was taken to the emergency room at a local hospital, where he was diagnosed with neck and lumbar sprains, as well as abdominal pain from his earlier Tylenol overdose. Dkt. 83-2, at 4.

ANALYSIS

Burgess is proceeding on one claim: that Mink violated Burgess's Eighth Amendment rights by failing to prevent him from harming himself. Prison officials must take reasonable measures to ensure the safety of a suicidal inmate, and failure to do so can violate the Eighth Amendment. *See, e.g.*, *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2011). Prevailing on a failure-to-protect claim requires proving both an objective and subjective element: "(1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendant[] [must be] deliberately indifferent

to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Proving the second, subjective element requires making another dual showing: the plaintiff must demonstrate that the defendant "(1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded that risk." *Id.* at 761. This requires showing "more than mere or gross negligence, but less than purposeful infliction of harm." *Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003).

Mink and Burgess have filed cross-motions for summary judgment raising the same issues. Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, the moving party must show that no reasonable jury could find in the other side's favor based on the evidence in the record. *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2103). When the parties cross-move for summary judgment, the court looks to the burden of proof that each party would bear on an issue at trial and requires that party to go beyond the pleadings to affirmatively establish a genuine issue of material fact. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party fails to establish the existence of an element essential to his or her case, and on which that party will bear the burden at trial, summary judgment against that party is appropriate. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995).

**A. Objectively serious harm**

The risk of suicide is an objectively serious medical condition. *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019). Mink contends that Burgess's self-harm attempt was not objectively serious because Burgess wasn't sincerely suicidal. Mink argues that Burgess's fall from the sink

5

was a feigned attempt, designed to manipulate prison staff. I am not persuaded that Burgess did not face a serious risk of harm.

Mink relies heavily on the cell video, which she says shows Burgess lowering himself to his feet in a controlled fall.[1] Mink is right that the video conclusively refutes Burgess's allegation in his amended complaint that he "swan-dived" from the sink. Dkt. 9, ¶ 34. And the video also shows that Burgess was not rendered unconscious: he clearly moves his arms and legs after the fall. But the video does not show Burgess lowering himself in a controlled fall, and it does not conclusively show that Burgess did not intend to harm himself. This is not a case in which Burgess's claim is plainly refuted by video evidence. *Cf. Scott v. Harris*, 550 U.S. 372, 378–81 (2007). But ultimately, the video is immaterial. The question at this point in the analysis is whether Burgess was at risk of serious harm, not whether he ultimately suffered a serious injury in the fall. *Cf. Daniels v. Klemmer*, 404 F. Supp. 3d 1223, 1230 (E.D. Wis. 2019) ("The question is whether, at the time the plaintiff made the threat and the defendants responded to it, the plaintiff was *at risk* of inflicting objectively serious harm on himself," not whether he actually inflicted objectively serious harm); *Braithwaite v. Smelcer*, No. 18-cv-1507, 2019 WL 3937015, at *3 (E.D. Wis. Aug. 19, 2019) (holding that a reasonable jury could conclude that plaintiff's self-harm threats were genuine at the time he made them, even though he ended up inflicting only minor injuries).

---

[1] Burgess says that the video hasn't been properly authenticated and should be excluded under Federal Rule of Evidence 403. Dkt. 135, at 8–9. But Mink submitted an authenticating declaration from WSPF's litigation coordinator, Dkt. 84, and Burgess doesn't explain why the video would be unduly prejudicial. I overrule Burgess's objection and will consider the surveillance video.

6

Mink also relies heavily on the expert declaration of her colleague, Stacy Hoem, a licensed psychologist at WSPF. I will disregard Hoem's declaration for several reasons. First, it is a highly questionable practice to proffer a party to the case as an expert. Burgess originally asserted claims against Hoem herself, but those claims were dismissed because Burgess failed to exhaust his administrative remedies for them. Dkt. 76. Although Hoem was not Burgess's assigned psychologist, she was personally involved in the events at issue in this lawsuit. And she is a close colleague of the sole remaining defendant. Perhaps these factors go to the weight of her evidence; but her deep connection to the case raises such basic concerns with bias that I would not allow her to testify as an expert.

Hoem's direct connection to the case raises a second concern: her declaration mixes testimony about the facts of the case with her expert analysis, posing all the risks of dual-role testimony described in *United States v. Jett*, 908 F.3d 252, 267–70 (7th Cir. 2018). *Jett* requires a dual-role witness to separate her testimony based on personal knowledge from her expert analysis. *Jett* deals primarily with the mode of presenting dual-role testimony to the jury. But Hoem's declaration hopelessly mixes the two types of evidence; I cannot tell where one ends and the other begins.

This leads to the third and most fundamental problem with Hoem's declaration: it does not provide a well-grounded explanation for her expert conclusions. Hoem cites a list of factors that tend to suggest earnest attempts at self-harm, Dkt. 82, ¶ 23, and a list of factors suggesting that secondary gain is a motive, *id*. at ¶ 24. She lists the sources of her knowledge as various training and articles she has read over the years and her experience in working for the DOC. *Id*. at ¶ 25. She does not explain how she derived the factors she cites, and she does not systematically apply those factors to Burgess's case. She simply provides a summary paragraph

in which she explains that Burgess's threats of self-harm coincide with his demands for certain treatment. *Id*. at ¶ 26. This superficial analysis provides only her bottom-line conclusion, making it impossible to test the validity of her expert analysis. Ultimately, she gives a common-sense impression, based on her and her colleagues' interactions with Burgess, that Burgess is a manipulator. Hoem's declaration would not be admissible as an expert analysis.

Hoem's opinion also misses the point. The question is not whether Burgess used threats of self-harm for manipulative purposes. The question is whether, whatever his motives, there was a serious risk to Burgess's health or safety. A prison official could not, for example, allow a prisoner with a history of suicidal gestures to possess a lethal dose of Tylenol in his cell, based on a belief that the prisoner didn't really want to die. Suicidal gestures, however insincere, sometimes result in real, serious injuries, which prison officials must take reasonable measures to prevent.

To be entitled to summary judgment on this ground, Mink would have to show that it is beyond genuine dispute that Burgess did *not* face an objectively serious risk of self harm. Mink has not made that showing. And how could she? At 10:30 a.m. on the day of the incident, just a few hours before the fall from the sink, Mink had ordered that Burgess be kept in close observation to reduce the risk of self-harm. Dkt. 102-1, at 2.

**B. Intentional disregard of a subjectively known risk**

There's no genuine dispute that Mink was aware that Burgess posed a risk of self-harm; that's why she kept him in close observation. But, for the same reason, there is also no dispute that Mink did not disregard that risk. Mink took steps to minimize the risk by putting Burgess in as status that sharply limited his property to deprive him of the usual means of self harm and that required that he be checked on at least every 15 minutes.

8

Burgess contends that Mink intentionally disregarded the risk that he would commit suicide by refusing to come "talk him out of his 2nd suicide attempt" when he began asking to speak with someone from PSU. Dkt. 135, at 13. Mink defends her refusal to comply with Burgess's demand: she says the refusal was both reasonable and consistent with good psychiatric care, because catering to his every demand would incentivize more self-harm gestures. That's a reasonable professional judgment, to which the court would defer because Burgess has cited nothing to contest it. *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016). "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Id.*

But Mink does not need to defend her refusal to talk Burgess out of his second suicide attempt for two reasons. First, she had already ordered that Burgess remain on close observation. That act alone shows that Mink did not disregard the threat to his safety. Second, it took only 22 seconds for Burgess to stand up, attempt to mount the sink, and fall to the floor. Burgess did not give anyone a chance to talk him off the sink. Even if Burgess had been under constant observation, correctional officers could not have intervened fast enough to prevent his fall.

No reasonable jury could find that Mink intentionally disregarded a known risk of harm to Burgess. I will grant Mink's motion for summary judgment, deny Burgess's cross-motion, and dismiss the case.

ORDER

IT IS ORDERED that:

1. Plaintiff Edward Burgess's motion for summary judgment, Dkt. 92; motion for permission to file a surreply, Dkt. 144; and motion for assistance recruiting counsel, Dkt. 145 are DENIED.

2. Burgess's motion for leave to file untimely supplemental materials, Dkt. 152, is GRANTED.

3. Defendant Angela Mink's motion for summary judgment, Dkt. 96, is GRANTED. Her motion to stay, Dkt. 159, is DENIED as moot.

4. The clerk of court is directed to enter judgment for defendant and close this case.

Entered March 6, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge